IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-02640-SBP

J.B.,[1]

        Plaintiff,

v.

MARTIN J. O'MALLEY,[2] Commissioner of Social Security,

        Defendant.

---

**OPINION AND ORDER**

---

**Susan Prose, United States Magistrate Judge**

Plaintiff J.B. brings this action under Title II, 42 U.S.C. §§ 401 *et seq.*, and Title XVI, 42 U.S.C. § 1381, *et seq.*, of the Social Security Act (the "Act") for review of the Commissioner of Social Security's (the "Commissioner") final administrative decision denying Plaintiff's claim for disability insurance benefits ("DIB") and supplemental security income ("SSI"). The court has carefully considered the parties' briefs, the social security administrative record, and the applicable law. No hearing is necessary.

Because the Administrative Law Judge ("ALJ") applied the correct legal standards and

---

[1] Pursuant to D.C.COLO.LAPR 5.2(b), "[a]n order resolving a social security appeal on the merits shall identify the plaintiff by initials only."

[2] Martin J. O'Malley is now the Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d). *See* 42 U.S.C. § 405(g) (an action survives regardless of any change in the person occupying the office of the Commissioner of Social Security).

1

substantial evidence supports her findings and the Commissioner's final decision, the court **AFFIRMS**.

## BACKGROUND

Plaintiff filed a Title II application for DIB and a Title XVI application for SSI on October 7, 2019, alleging disability beginning on May 1, 2019. AR: 9.[3] The claim was initially denied on April 16, 2020, and again on reconsideration on February 19, 2021. AR: 58-157. Plaintiff filed a request for a hearing on March 30, 2021. AR: 186-187. ALJ Rebecca LaRiccia held a hearing on January 18, 2022. AR: 35-57. On February 24, 2022, the ALJ issued an unfavorable decision. AR: 8-29.

Thereafter, Plaintiff filed a Request for Review of Hearing Decision on March 23, 2022. AR: 202-216. The Appeals Council denied review on August 9, 2022, AR: 1-7, and Plaintiff then sought review with this court. ECF No. 1. Plaintiff filed his opening Brief, ECF No. 10 ("Brief"), Defendant responded, ECF No. 14 ("Response"), and Plaintiff replied, ECF No. 15 ("Reply").

## DIB FRAMEWORK/SSI FRAMEWORK[4]

A person is disabled within the meaning of the Act "only if his physical and/or mental impairments preclude him from performing both his previous work and any other 'substantial gainful work which exists in the national economy.'" *Wilson v. Astrue*, No. 10-cv-00675-REB,

---

[3] The court uses "ECF No. ---" to refer to specific docket entries in CM/ECF and uses "AR: ---" to refer to documents in the administrative record. The administrative record is found at ECF No. 8.

[4] The court here cites relevant sections of Part 404 of Title 20 of the Code of Federal Regulations, which contain the Commissioner's regulations relating to disability insurance benefits. Identical, parallel regulations are found in Part 416 of Title 20, relating to supplemental security income benefits. The analysis in this Opinion encompasses the identical regulations covering supplemental security income benefits, even if not specifically referenced.

2011 WL 97234, at *1 (D. Colo. Jan. 12, 2011) (quoting 42 U.S.C. § 423(d)(2)). "However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Social Security Act. To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months." *Brandon v. Colvin*, 129 F. Supp. 3d 1231, 1232 (D. Colo. 2015) (citing *Kelley v. Chater*, 62 F.3d 335, 338 (10th Cir. 1995)). "[F]inding that a claimant is able to engage in substantial gainful activity requires more than a simple determination that the claimant can find employment and that he can physically perform certain jobs; it also requires a determination that the claimant can *hold* whatever job he finds for a significant period of time." *Fritz v. Colvin*, No. 15-cv-00230-JLK, 2017 WL 219327, at *8 (D. Colo. Jan. 18, 2017) (emphasis in original) (quoting *Washington v. Shalala*, 37 F.3d 1437, 1442 (10th Cir. 1994)).

The Commissioner is required to follow a "five-step sequential evaluation process" which guides the determination of whether an adult claimant meets the definition of disabled under the Social Security Act. 20 C.F.R. § 404.1520(a)(i)-(v) (DIB evaluation of disability of adults). If it can determine if the claimant is disabled or not at a step, the Commissioner makes the determination and does not continue to the next step. 20 C.F.R. § 404.1520(a)(4). However, if it cannot make that determination, the Commissioner proceeds to the next step. *Id.*

Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is "not disabled regardless of [ ] medical condition, . . . age, education, and work experience." 20 C.F.R. §§ 404.1520(a)(4)(i), 404.1520(b).

Step two assesses whether the claimant has a medically severe impairment or combination of impairments under 20 C.F.R. § 404.1509. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant does not show "any impairment or combination of impairments which significantly limits [their] physical or mental ability to do basic work activities," the claimant is "not disabled" regardless of "age, education, and work experience." 20 C.F.R. § 404.1520(c).

Step three tests whether the claimant's "impairment(s) meets or equals" a listed impairment and "meets the duration requirement[.]" 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is disabled regardless of "age, education, and work experience." 20 C.F.R. § 404.1520(d). If not, the Commissioner analyzes the claimant's residual functional capacity, or "RFC," which "is the most [the claimant] can still do despite [their] limitations." 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1).

Step four considers whether the claimant "can still do [their] past relevant work" based on their RFC. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(e). To be disabled, the claimant's "impairment(s) must prevent [them] from doing [their] past relevant work." 20 C.F.R. § 404.1520(f). For guidance on this determination, "ALJs often seek the views of 'vocational experts.'" *See Biestek v. Berryhill*, 587 U.S. 97, 100 (2019) (citing 20 C.F.R. §§ 404.1566(e), 416.966(e)). If the claimant's "severe impairment" prevents them from doing their "past relevant work" or they have no "past relevant work," the analysis continues to the final step. 20 C.F.R. § 404.1520(g).

Lastly, step five considers the RFC assessment and the claimant's vocational factors— "age, education, and work experience." 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g)(1). Any other work the claimant "can adjust to must exist in significant numbers in the national economy

(either in the region where [they] live or in several regions in the country)." 20 C.F.R. § 404.1560(c)(1). The Commissioner is "responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [their] residual functional capacity and vocational factors." 20 C.F.R. § 404.1560(c)(2). If the claimant "can make an adjustment to other work," they are "not disabled." 20 C.F.R. § 404.1520(g).

The claimant has the burden of proof at steps one through four. The Commissioner bears the burden of proof at step five to prove there is other work the plaintiff can perform. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). The burden-shifting at step five, however, does not shift the plaintiff's burden to prove her RFC. 20 C.F.R. § 404.1560(c)(2) ("We are not responsible for providing additional evidence about your residual functional capacity because we will use the same residual functional capacity assessment that we used to determine if you can do your past relevant work.").

## ALJ'S DECISION

At step one, the ALJ first found that Plaintiff met the insured status requirements of the Act through December 31, 2022, and had not engaged in substantial gainful activity since the alleged onset date of May 1, 2019. AR: 13. At step two, the ALJ found that Plaintiff had the following severe impairments: "obesity, gout, rotator cuff syndrome, post-surgical repair on the left; right shoulder tendinopathy and acromioclavicular joint osteo arthritis, labral tear, post-surgical repair; degenerative disc disease; chronic pain syndrome; bilateral carpal tunnel syndrome; post-traumatic stress disorder; major depressive disorder; and anxiety." *Id.*

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of a listed impairment. AR: 14. In making this determination, the ALJ conducted a "paragraph B" analysis[5] of Plaintiff's mental impairments and found that he had a moderate limitation in understanding, remembering, and applying information; a moderate limitation in interacting with others; a moderate limitation in concentrating, persisting or maintaining pace; and a moderate limitation in adapting of managing himself. AR: 15-16.

The ALJ then assessed Plaintiff's RFC, finding that he could

> perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant can occasionally climb ramps and stairs with the use of a handrail. The claimant cannot climb ladders, ropes, or scaffolds. The claimant can occasionally stoop, kneel, crouch, and crawl. The claimant can avoid overhead reaching bilaterally. The claimant can frequently handle, finger, and feel. The claimant must avoid all exposure to unprotected heights and dangerous moving machinery. The claimant can understand, remember, and carry out simple instructions that can be learned in thirty days or less and can sustain concentration, persistence, and pace to simple instructions for two-hour intervals with normal breaks. The claimant can have occasional noncollaborative interactions with coworkers, and supervisors, and can work in close proximity to, but not directly with the general public. The claimant can adapt to simple workplace changes.

AR: 17 (bold removed).

At step four, the ALJ found that Plaintiff was unable to perform any of his past relevant

---

[5] If the claimant has a medically determinable mental impairment, the ALJ must assess the claimant's limitations attributable to such mental impairments in the following four broad areas of mental functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. §§ 404.1520a(b)(1), (c)(3). These areas of mental functioning are known as the "paragraph B" criteria. 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00(E).

work. AR: 21.

Finally, at step five, the ALJ found that Plaintiff could perform the jobs of final assembler optics (DOT #713.687-018, sedentary, SVP 2, with about 16,000 positions nationally); touch up screener, printed circuit boards (DOT #726.684-110, sedentary, SVP 2, with 10,000 positions in the national economy), and addresser (DOT #209.587-010, sedentary, SVP 2, about 10,000 jobs in the U.S.). AR: 23.

With this, the ALJ concluded that Plaintiff was not disabled and denied his applications for benefits. *Id.*

## LEGAL STANDARDS

In reviewing the Commissioner's decision, the court "is limited to determining whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1175 (10th Cir. 2014). "The phrase 'substantial evidence' is a 'term of art,' used throughout administrative law to describe how courts are to review agency factfinding." *Biestek*, 587 U.S. at 102 (quoting *T-Mobile South, LLC v. Roswell*, 574 U.S. 293, 301 (2015)). In applying the substantial-evidence standard,

> a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations. And whatever the meaning of "substantial" in other contacts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Id.* at 102-103 (cleaned up); *see also Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004) ("Substantial evidence requires more than a scintilla but less than a preponderance.") (quoting

*U.S. Cellular Tel., L.L.C., v. City of Broken Arrow, Okla.*, 340 F.3d 1122, 1133 (10th Cir. 2003)). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Zoltanski*, 372 F.3d at 1200 (quoting *U.S. Cellular*, 340 F.3d at 1133).

The court "may neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Knight*, 756 F.3d at 1175 (citation omitted); *see also Zoltanski*, 372 F.3d at 1200 (the court may not displace the Commissioner's choice between two fairly conflicting views, even if the court would have made a different choice if the matter had been before it de novo). Even so, this court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (quoting *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007)). "[A] reviewing court must uphold even a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Garland v. Dai*, 593 U.S. 357, 369 (2021) (cleaned up).

In addition, this court's review is guided by the harmless error doctrine, which the Tenth Circuit Court of Appeals applies to social security disability cases. *See Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004). A court "may apply harmless error in the social security context 'where, based on material the ALJ did at least consider (just not properly), [it] could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way.'" *Armijo v. Astrue*, 385 F. App'x 789, 792 (10th Cir. 2010) (quoting *Allen*, 357 F.3d at 1145).

## ANALYSIS

Plaintiff challenges the ALJ's decision on two interrelated grounds. First, Plaintiff says that the ALJ's assessment of opinions from three medical sources—Dr. Filipovitz, Occupational Therapist Myers, and Dr. Thye—was not supported by substantial evidence. Brief at 15-21. Second, Plaintiff argues that the ALJ did not apply the correct standards when evaluating these opinions. *Id.* at 18-19.

### A.   Medical opinions.

An ALJ must "give consideration to all the medical opinions in the record," *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012), and articulate how persuasive she finds each medical source's opinion. 20 C.F.R. §§ 404.1520c.

The persuasiveness of a medical source's opinion is evaluated using five factors: (1) supportability; (2) consistency; (3) the medical source's relationship with the claimant, which includes the length of the treatment relationship, the frequency of examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and whether the treatment relationship is an examining relationship; (4) the medical source's area of specialization; and (5) other factors tending to support or contradict a medical opinion or prior administrative medical finding. 20 C.F.R. § 404.1520c(c). The regulations instruct that supportability and consistency "are the most important factors." 20 C.F.R. § 404.1520c(b)(2).

The supportability factor considers whether the medical source's opinion is supported by "objective medical evidence" and "supporting explanations;" "the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his

9

or her medical opinion, the more persuasive the medical opinion will be." 20 C.F.R. § 404.1520c(c)(1) (cleaned up).

The consistency factor compares the medical source's opinion and "the evidence from other medical sources and nonmedical sources" in the record. 20 C.F.R. § 404.1520c(c)(2). "The more consistent a medical opinion is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion will be." *Id.* (cleaned up).

Social Security regulations do not "prescribe the depth at which the ALJ must discuss" supportability and consistency. *Harp v. Kijakazi*, No. CV 1:21-0275 KRS, 2022 WL 2341740, at *6 (D.N.M. June 29, 2022). At a minimum, though, the ALJ must "provide an explanation that allows the reviewing court to follow [her] reasoning and communicates how [s]he considered the factors of consistency and supportability for each medical source's opinions." *Zambrano v. Kijakazi*, No. CV 1:20-1356 KRS, 2022 WL 1746765, at *5 (D.N.M. May 31, 2022).

      1.     *Dr. Filipovitz*

As recounted by the ALJ, Dr. Filipovitz "opined that the claimant is limited to sitting for five minutes at one time and for less than two hours in an eight-hour workday; standing for ten minutes at one time and for less than two hours in an eight-hour workday; needing to walk every fifteen minutes for five minutes; needing a job that permits shifting at will; needing to take unscheduled breaks hourly for ten to fifteen minutes; occasionally lifting less than ten pounds; rarely lifting ten pounds; and never lifting twenty pounds; and never twisting, stooping, or climbing ladders." AR: 20-21.

The ALJ found that this opinion was not supported by Dr. Filipovitz's own evaluation, in which he noted that Plaintiff exhibited normal gait. AR: 21 (citing AR: 561). Additionally, the ALJ noted that Dr. Filipovitz's opinion regarding Plaintiff's sitting limitations was inconsistent with Plaintiff's testimony that he could sit longer than Dr. Filipovitz had found. *Id.* (citing AR: 47). Moreover, the ALJ highlighted Plaintiff's other examinations which showed that he had normal strength. *Id.* (citing AR: 953, 1162, 1227).

Based on this explanation, the court finds that the ALJ adequately set forth why Dr. Filipovitz's opinion was not persuasive and highlighted parts of the record that went to the supportability and consistency of his opinion. Moreover, the court declines Plaintiff's invitation to say that the evidence cited by the ALJ was not substantial. Ultimately, the ALJ's explanation has allowed the court to follow her reasoning, determine that she has addressed the relevant factors, and conclude that substantial evidence supports her conclusions. *See Zambrano*, 2022 WL 1746765, at *5. Plaintiff's first argument is overruled.

    2.    **OT Myers**

Myers determined that Plaintiff did not have normal strength and was "limited to less than sedentary exertional activities but cannot work in any capacity." AR: 21. Although the ALJ found Myers's opinion on Plaintiff's exertional limitation to be supported, she was not entirely persuaded by his opinion that Plaintiff could not work in any capacity, stating that it was not consistent with other evidence and was ultimately an issue reserved for the Commissioner to decide. *Id.*

First, the court notes that the ALJ considered the supportability of Myers's opinion and found that it was supported. AR: 21. Yet, the ALJ was not fully persuaded by Myers because his

11

opinion was not *consistent* with other evidence. *Id.* Specifically, the ALJ found Myers's opinion that Plaintiff cannot work in any capacity was inconsistent with other evidence showing that Plaintiff had normal gait and strength. *Id.* Elsewhere, the ALJ cites support for her reasoning. AR: 19 (citing AR: 405, 561, 610, 614, 618, 622, 626, 630, 634, 638, 642, 646, 650 654, 953, 1162, 1227).[6]

Still, Plaintiff says that the ALJ erred in her consistency assessment. Plaintiff notes that Myers conducted a functional capacity evaluation before making his findings. He then argues that the ALJ overlooked this fact when she concluded that Plaintiff had normal strength and gait. He claims the ALJ "gave more weight to a passing reference of 'normal strength' than to a two-and-a-half-hour functional capacity evaluation. She weighed it above a treating doctor's well-supported opinion of his patient's limitations." Brief at 18.

In effect, Plaintiff argues that the ALJ "cherry-picked" the evidence, and he now all but asks the court to reweigh the evidence. This the court cannot do. *See K.K. v. Kijakazi*, No. 1:20-cv-02040-DDD, 2022 WL 819540, at *7 (D. Colo. Mar. 18, 2022) (noting that this type of argument "'is seldom successful because crediting it would require a court to re-weigh record evidence.'") (quoting *DeLong v. Comm'r*, 748 F.3d 723, 726 (6th Cir. 2014)); *see also L.M.M. v. Kijakazi*, No. 21-cv-02036-JLK, 2022 WL 17104585, at *7 (D. Colo. Nov. 22, 2022) (acknowledging that an ALJ is not entitled to pick and choose from a medical opinion, but affirming the ALJ's determination that an opinion lacked persuasiveness when it relied on other

---

[6] It appears that there was a scrivener's error when the ALJ cited to Exhibit 6F in her decision and meant to cite instead to Exhibit 3F. *See Poppa v. Astrue*, 569 F.3d 1167, 1172 n.5 (10th Cir. 2009) (recognizing that "a mere scrivener's error" does "not affect the outcome of [a social security] case").

12

parts of the record to support her conclusion) (citing *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004)).

Certainly, the ALJ could have said more—which is true in almost every Social Security decision—but the fundamental question is whether the ALJ's conclusion that Myers's opinion is not consistent with other parts of the record is supported by substantial evidence. Here, the ALJ cited evidence to support her conclusion. Again, the court is hesitant to label this evidence as insubstantial. More to the point, though, deciding whether the evidence weighs toward crediting or discounting Myers's opinion is for the ALJ—not this court—to do. Accordingly, Plaintiff's second argument is overruled.

### 3. *Dr. Thye*

Dr. Thye found that

> [Plaintiff's] ability to accept instruction and constructive criticism, and respond appropriately to co-workers and public in a working setting is moderately impaired. His ability to maintain attention and persist in simple work-related tasks is moderately impaired. He demonstrated markedly slow processing on 3/5 concentration tasks. His ability to understand, recall and remember tasks is markedly impaired. His ability to sustain acceptable attendance and work without interruptions is moderately impaired for simple, familiar tasks. His ability to adapt to new situations is markedly impaired. His ability to follow short, simple instructions or directions is moderately impaired for repetitive tasks. His ability to carry out more detailed and complex instructions is markedly impaired.

AR: 98. The ALJ assessed Dr. Thye's findings at Step 3 while applying the paragraph B factors and during her RFC analysis. *See* AR: 15-16, 19-20. At Step 3, the ALJ concluded that Plaintiff had moderate limitations when it came to: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. AR: 15-16.

In doing so, the ALJ did not agree with Dr. Thye's conclusion that Plaintiff had more significant limitations with memory and concentration. Specifically, the ALJ found that Plaintiff "generally exhibited intact memory during his evaluations" and "exhibited an ability to understand, remember, and apply information by completing a prehearing work background form, which detailed the claimant's prior work titles, duties, and dates." AR: 16 (citing AR: 370-71). Additionally, the ALJ found that Plaintiff's "examinations generally reveal his attention and concentration to be normal," and noted that he "engages in activities that require significant concentration and attention, such as driving." *Id.*; *see* AR: 51, 377, 984, 1127; *see also* AR: 317, 1178.

During her RFC analysis, the ALJ addressed Dr. Thye's opinion and found it less than fully persuasive. AR: 20. The ALJ wrote that

> Dr. Thye's opinion concerning [Plaintiff's] marked, and even some of his moderate mental limitations is inconsistent with other examination findings demonstrating the claimant to have normal thought processes, judgment, and insight. Therefore, the undersigned finds that Dr. Thye overstates the claimant's limitations with adapting to new situations and understanding and carrying out more detailed and complex instructions. This opinion was based on a one-time evaluation and is not supported by a review of the medical evidence of record as a whole.

AR: 20 (cleaned up) (citing AR: 1114-15).

Plaintiff makes four points to support his argument that the ALJ erred in her assessment of Dr. Thye's opinion and findings. First, Plaintiff maintains that the ALJ supported her conclusion by citing "a very short note from an intake examination where there was no mention of the source." Brief at 19. Second, he insists that it was legal error for the ALJ not to address the results of Dr. Thye's tests. *Id.* With this, he suggests that the ALJ "combed" the record, seeking support for a "preordained" conclusion. *Id.* Third, Plaintiff takes issue with the ALJ citing his

14

driving as the basis for her finding that he had only a moderate limitation with concentration. *Id.* Plaintiff says that the ALJ failed to cite evidence that driving is mentally demanding or that it is inconsistent with Dr. Thye's findings. *Id.* Along with this, Plaintiff maintains that the ALJ overlooked that he struggles with driving and avoids doing so. *Id.* at 19-20. Finally, Plaintiff says that when viewed in context, the evidence cited by the ALJ supports Dr. Thye's opinion instead of contradicting it. *Id.* at 20.

On all accounts, the court respectfully disagrees. First, although Plaintiff says that the ALJ cites "a very short note from an intake examination where there was no mention of the source," the court notes that this is not the only evidence cited by the ALJ. Instead, she provides multiple citations to the record in support of her conclusions.

Second, whether or not the ALJ specifically mentions Dr. Thye's test results, a review of the ALJ's analysis of the paragraph B factors and Dr. Thye's opinion indicates that she adequately considered Dr. Thye's findings, even if she did omit an explicit reference to the results of the tests he administered. *See Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (noting that so long as the record demonstrates that the ALJ considered the evidence, she is "not required to discuss every piece of evidence").

Third, the court does not find that it was a manifest error for the ALJ to cite Plaintiff's driving as a basis for her conclusion that he had only a moderate limitation with concentration, nor does the court believe that the ALJ had to cite evidence that driving is mentally demanding. *See C.L.P. v. Comm'r, Soc. Sec. Admin.*, No. 21-cv-02934-KLM, 2023 WL 2644080, at *9 (D. Colo. Mar. 27, 2023) (citing *Markham v. Califano*, 601 F.2d 533, 534 (10th Cir. 1979) (stating that activities such as driving do not necessarily establish that a claimant can engage in

substantial gainful activity but may be considered in evaluating whether a claimant is disabled)). Further, while Plaintiff did say that he had trouble driving, he also testified that he could drive for 45 minutes at a time. AR: 51. Ultimately, the ALJ's reliance on driving as an indicator of Plaintiff's ability to concentrate was not improper.

Plaintiff's fourth argument that the overall record supports Dr. Thye's opinion is yet another call for this court to reweigh the evidence. The ALJ provided numerous citations to the record in support of her conclusions.

In the end, the ALJ explained why she was not convinced by Dr. Thye and, in doing so, highlighted discrete pieces of evidence as support. Plaintiff may disagree with the ALJ's ultimate determination or the weight she assigned to the evidence before her, but nothing Plaintiff argues suggests that she erred. Plaintiff's third argument is overruled.

**B.     The ALJ applied the correct legal standards.**

Finally, Plaintiff argues: "The ALJ's conclusion to credit the opinions of the State Agency medical consultants over those of the independent consultative examiner does not comply with the guidelines provided in the regulations for evaluating opinion evidence. In doing so, the ALJ has failed to apply the correct legal standard." Brief at 18. Plaintiff does not expand on this issue further in his Brief. He returns to it in his Reply, maintaining that this argument "was intended to demonstrate that the ALJ's failure to evaluate the opinion evidence as required under §1520c was reversible error." Reply at 4. Plaintiff argues that the ALJ "fail[ed] to evaluate the opinion evidence, including those from the State Agency, under §1520c." *Id.*

As previously noted, when an ALJ is called on to evaluate medical opinions, she must assess the opinion using the § 1520c factors and—at the very least—address supportability and

16

consistency. This is the correct legal standard, and a review of the ALJ's decision demonstrates that this is what she applied. Plaintiff's argument is, in essence, that the ALJ applied the correct legal standard incorrectly. The court has already addressed why there is substantial evidence to support the ALJ's decision here. Accordingly, Plaintiff's final argument is overruled.

## CONCLUSION

For the foregoing reasons, the court respectfully finds that the Commissioner's final decision is supported by substantial evidence in the administrative record and applies the correct legal standards. Consequently, the court finds no grounds warranting reversal or remand. Accordingly, the court **AFFIRMS** the ALJ's determination that Plaintiff is not disabled. The Clerk of Court shall enter judgment in the Commissioner's favor and close this civil action.

DATED: September 19, 2024                BY THE COURT:

_____
Susan Prose
United States Magistrate Judge